McGREGOR W. SCOTT
United States Attorney
DEBORA G. LUTHER
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814-2322
Telephone: (916) 554-2720
Facsimile: (916) 554-2900

Attorneys for Defendants
United States of America and
Department of the Interior

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS ROBINSON, SPENCER ROBINSON, JR., RICKE ROBINSON CYNTHIA ROBINSON, VICKIE ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, as Trustee for the Indians of the Mooretown Rancheria, aka MAIDU INDIANS OF CALIFORNIA, DEPARTMENT OF THE INTERIOR [BUREAU OF INDIAN AFFAIRS] and DOES 1 - 50, inclusive,<br><br>Defendants. | CASE NO. CIV.S-04-0734 DFL/KJM<br><br>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR FOR SUMMARY JUDGMENT<br><br>DATE:        June 22, 2005<br>TIME:         9:00 a.m.<br>COURTROOM:   7 |

INTRODUCTION

The United States and the Department of the Interior (hereafter, collectively referred to as "Unites States") seek dismissal of this suit for lack of subject matter jurisdiction. In the instant case, plaintiffs challenge the scope of a road easement, half of which crosses land held in trust by the United States for the Mooretown Rancheria of Maidu Indians of California (hereafter, " the Tribe") while the other half of the easement crosses land held in fee by the Tribe, which is not a party to this

1

action. Therefore, this court lacks subject matter jurisdiction over plaintiffs' claim because the QTA bars plaintiffs from proceeding against the United States and because the Tribe is a necessary and indispensable party that cannot be joined due to the Tribe's sovereign immunity.

Alternatively and assuming *arguendo* that plaintiffs seek damages under the Federal Tort Claims Act ("FTCA"), their claims fail because there is no allegation in plaintiffs' complaint of a tortious act or omission *by a federal employee*. Moreover, as the trustee of the land, the United States owes no duty to the plaintiffs.

Therefore, defendants seek dismissal of this suit or, in the alternative, for summary judgment.

## FACTS[1]

1. Plaintiffs, Dennis Robinson, Spencer Robinson, Jr., Ricke Robinson, Cynthia Robinson, and Vickie Robinson ("Robinson") own a non-exclusive 60-foot easement over property owned by the Tribe and by the United States in trust for the Tribe. Compl. at 1 (¶ 1). Plaintiffs are believed to be non-Indian. Their land is not held in trust by the United States. Declaration of Kanu Patel, filed simultaneously herewith.

2. The non-exclusive easement is located on Alverda Dr. in Butte County, California. *Id*. at 1 (¶ 1); *id*. at Exhibit 1.

3. The easement lies on several servient tenements. The United States holds parcels 3 and 4 in trust for the Tribe. *See id.* at 2 (¶ 2). The Tribe holds parcel 1 in fee. *Id*. at 2 (¶ 8). With the exception of the site of the parking lot for the Tribe's casino, Parcel 2 is held in trust by the United States for the Tribe. *Id.* at 2 (¶ 3); Patel declaration. The dominant tenement, consisting of 360 acres, is owned in fee by the plaintiffs. *Id*. at 2 (¶ 2), 3 (¶ 11).

4. That portion of Alverda Road that is on the Tribe's land (both land held in fee by the Tribe as well as land held in trust for the Tribe) has been part of the road system maintained by the Bureau of Indian Affairs ("BIA") since 1997. Patel Declaration. Since the date of acceptance of land in trust, the Bureau of Indian Affairs ("BIA") has not performed any work on the road nor is BIA responsible for approving, constructing and/or maintaining the encroachments challenged by

---

[1] The following facts are taken from the plaintiffs' complaint and are conceded solely for the purposes of the motion to dismiss only.

2

plaintiffs. *Id.* Plaintiffs make no allegations in their complaint that any act or omission by any federal employee is responsible for any of the alleged damage or encroachment challenged in this action. *See, infra* at ¶¶ 5-10.

5. The Tribe has constructed a parking lot within the past three years that is "adjacent to the south edge of the subject easement." *Id*. at 4 (¶ 20). The plaintiffs allege that this construction created a 15 foot encroachment into the easement. *Id*. The complained of encroachment consists of a "bullnose" and "curb and walkway." *Id*. This parking lot, including the bullnose, curb and walkway that offend plaintiffs, are located on land held in fee by the Tribe. Patel declaration at ¶ 5.

6. The Tribe removed an allegedly "offending fountain" within the easement. *Id*. at 4 (¶ 22). After that removal, the Tribe then constructed "water valves and a power facility" allegedly within the easement. *Id*.

7. The Tribe has installed "wrought iron fencing imbedded [sic] in concrete adjacent to [their] parking lots." *Id*. at 4 (¶ 24). This fencing allegedly encroaches into the easement by 15 feet. *Id*.

8. The Tribe has "installed a fire hydrant" allegedly within the easement. *Id*. at 4 (¶ 26).

9. The Tribe's construction "caused a slope/slump on the north side of the easement." *Id*. at 3 (¶ 17), 8 (¶ 54).

10. The Tribe has allegedly removed lateral and subjacent support from the easement due to grading of its land. *Id*. at 5 (¶¶ 33, 34); *id.* at 6 (¶¶ 40-42). "Since excavation, the soil within the easement has continually washed out, fallen and otherwise subsided from the easement . . ." *Id*. at 5 (¶ 34). This has created a "vertical cut" which allegedly prevents the plaintiffs from "repairing existing damage or . . . prevent[ing] future subsidence." *Id*. (¶ 36).

## DISCUSSION

I. STANDARDS OF REVIEW

    A.    STANDARD OF REVIEW APPLICABLE TO THE COURT'S SUBJECT MATTER JURISDICTION

A party seeking to invoke the Court's jurisdiction must allege, and has the burden of proving, all facts necessary to establish jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277-78, 57 S.Ct. 197, 201 (1936); *Scott v. Breeland*, 792 F.2d 925, 926 (9th Cir. 1986). Where, as here, a

motion to dismiss raises a jurisdictional issue separable from the merits, the Court may hear evidence and rule on that issue prior to trial, resolving factual disputes as necessary. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill Pub. Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Augustine*, 704 F.2d at 1077 (quoting *Thornhill*, 594 F.2d at 733).

Logically, since plaintiffs must allege and prove all facts necessary for jurisdiction, they bear the initial burden of persuasion. *Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir. 1995) (stating that the "plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA"). When jurisdiction is predicated on the FTCA, this burden includes showing a "negligent or wrongful act or omission of any *employee* of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *United States v. Becker*, 378 F.2d 319, 321 (9th Cir. 1967) (emphasis added). In order to survive a motion to dismiss for lack of subject matter jurisdiction, the plaintiff must show some negligent action by an employee of the government.

B. STANDARD OF REVIEW APPLICABLE TO SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure directs entry of summary judgment when no genuine issue of material fact requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). The party opposing summary judgment must demonstrate the existence of a genuine issue of material fact, and must tender evidence in the form of affidavits or admissible discovery materials to do so. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1355-56 (1986). To warrant trial, a disputed fact must be "material" in the sense that it could affect the outcome of the case under governing law, and the dispute must be "genuine" in the sense that the evidence could support a reasonable finding on that issue in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-53, 106 S.Ct. 2505, 2511-13 (1986); *Matsushita*, 475 U.S. at 585-88, 106 S.Ct. at 1355-57. Any undisputed fact which, standing alone, would preclude judgment for the plaintiff "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

/ / /

## II. THIS COURT LACKS SUBJECT MATTER OVER PLAINTIFFS' SUIT

### A. PRINCIPLES OF SOVEREIGN IMMUNITY

Jurisdictional analysis commences with the maxim that "[j]urisdiction over any suit against the [United States] Government requires a clear statement from the United States waiving sovereignty." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 1131 (2003)(citing *United States v. Mitchell*, 445 U.S. 535, 538-39, 100 S.Ct. 1349, 1351-52 (1980) ("*Mitchell I"*)). The United States, its agencies and its employees may not be sued in the absence of a waiver of sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994); *Loeffler v. Frank*, 486 U.S. 549, 555, 108 S.Ct. 1965, 1968 (1988); *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953 (1976). The terms of the sovereign's consent narrowly define a court's jurisdiction, *United States v. Sherwood*, 312 U.S. 584, 586-87, 61 S.Ct. 767, 770 (1940), and any waiver of immunity must be unequivocally expressed. *Testan*, 424 U.S. at 399, 96 S.Ct. at 954; *see also*, *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert.denied*, 466 U.S. 958 (1984); *Hill v. United States*, 571 F.2d 1098, 1101 (9th Cir. 1982); *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982). Moreover, "a party bringing a cause of action against the federal government bears the burden of demonstrating an unequivocal waiver of immunity." *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987), *cert.denied*, 487 U.S. 1204 (1988); *Holloman*, *supra*. "The Government's consent to be sued 'must be construed strictly in favor of the sovereign.'" *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 1014-15 (1992)(quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19 (1951)). Absent a statute waiving the government's sovereign immunity, this court lacks jurisdiction to entertain the suit. *United States v. Sherwood*, 312 U.S. 584, 587-88, 61 S.Ct. 767, 770 (1940) ("Except as Congress has consented there is no jurisdiction in the [courts] to entertain suits against the United States."). Therefore, any waiver of immunity must be unequivocally expressed in the statutory text, "construing ambiguities in favor of immunity." *United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 1616 (1995); *United States v. Idaho*, 508 U.S. 1, 6-7, 113 S.Ct. 1893, 1896 (1993); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). "The immunity of the government applies whether the government is right or wrong.

/ / /

The very purpose of the doctrine is to prevent a judicial examination of the merits of the government's position." *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir., 1987).

The Quiet Title Act, 28 U.S.C. § 2409a, provides a limited waiver of sovereign immunity for certain property claims. *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811 (1983). However, this waive is subject to a significant limitation: Sovereign immunity is not waived for claims relating to lands held in trust by the United States for Indian tribes or for individual Indians. 28 U.S.C. § 2409a(a).

Similarly, the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.*, also provides a limited waiver of sovereign immunity for certain tort claims. Significantly, for purposes of our discussion here, plaintiffs' alleged injury must result from an act or omission by a federal employee. 28 U.S.C. § 1346(b); *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215 (973).

B.  BRIEF HISTORY OF FEDERAL-TRIBAL RELATIONS

(1) History of the Trust relationship between the United States and Native tribes.

It is undisputed that the United States holds a portion of the servient tenement in trust for the Mooretown Rancheria. Compl. at 1-2 (¶ 1). This trust relationship is the result of a complex history of relations between the United States and the Native tribes. *Kenai Oil and Gas, Inc. v. Dept. of Interior*, 522 F.Supp. 521, 534 (D.C. Utah 1981). The initial policy of the federal government was to encourage "westward migration of Indian tribes by offering to exchange unsettled lands in the West for Indian land in the East." *Cobell v. Norton,* 240 F.3d 1081, 1087 (D.C.Cir. 2001). The policy next shifted to assimilation, offering land which had been set aside for tribes to individual members of those tribes. *Id*. "The objectives of [the] allotment were simple and clear cut: to extinguish tribal sovereignty, erase reservation boundaries, and force the assimilation of Indians into the society at large." *County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation*, 502 U.S. 251, 254, 112 S.Ct. 683, 686 (1992). Many of these allotments resulted in loss of the land to non-native individuals by sale or transfer. Thus, "Indian allottees[,] divested of their land[,] were deprived of an opportunity to acquire agricultural and other self-sustaining economic skills . . . [which] compromis[ed] Congress' purpose of assimilation." *Id.* Congress responded, through the Indian

General Allotment Act of 1887, by restricting alienation of tribal land "by providing that each allotted parcel would be held by the United States in trust for a period of 25 years or longer." *Id*. In 1934, the Indian Reorganization Act ceased allotment and extended the period of trust indefinitely for already allotted land. *Id*. at 255. "[T]he Act provided for restoring unallotted surplus Indian lands to tribal ownership . . . and for acquiring, on behalf of the tribes, lands 'within or without existing reservations.'" *Id*. *quoting* 25 U.S.C. § 465. Many similar statutes and regulations provide for the taking of land in trust for a tribe. *See e.g.* 25 C.F.R Part 151.

### (2) Indian tribes, as quasi-sovereign nations, have a guardian-ward relationship with the United States

Federally-recognized Indian tribes, as "quasi-sovereign nation[s]," are accorded sovereign immunity and cannot be sued absent tribal consent or congressional consent. *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975). "[T]ribes have been described as 'domestic dependent nations,'[citation omitted] exercising many of the sovereign powers of an independent nation, yet existing in a ward-guardian relationship with the federal government." *United States v. Red Lake Band of Chippewa Indians,* 827 F.2d 380, 383 (8th Cir. 1987). The relationship between the United States and the Indian tribes was first described as a ward-guardian relationship by the Supreme Court in *Cherokee Nation v. Georgia*. F. Cohen, Handbook of Federal Indian Law 650 (1982 ed.) (hereinafter "Cohen"). "Despite the Court's language, the federal-Indian relationship is unique and differs in important ways from the common law of guardianship." *Id.* at 650-51. Guardianships themselves are generally "supervised by state courts . . . based on minority or mental incompetency and terminate when the disability ends." *Id*. at 651 n.57. Similarly, where Congress has assumed, through legislation, a duty manage specific resources and property for tribes, the federal government has an obligation to "control and manage the property and affairs of [the Tribes] in good faith for their welfare." *Chippewa Indians of Minnesota v. United States*, 301 U.S. 358, 375, 57 S.Ct. 826, 833 (1937); *see also White Mountain Apache Tribe*, 537 U.S. at 474-75, 123 S.Ct. at 1133 (same). This relationship exists until explicitly extinguished by Congress. *See United States v. Gemmill*, 535 F.2d 1145.1147-48 (9th Cir. 1976) (finding that tribal land "may be extinguished by the federal government at any time . . . [but] an 'extinguishment cannot be lightly implied in view of the

avowed solicitude of the Federal Government for the welfare of its Indian wards' [citation omitted]"). Outside of those areas covered by federal restrictions, "Indians are as competent as other persons." Cohen at 651 (stating further that "no generalized notion of Indian wardship or incompetency is a valid basis to deny Indians any rights or benefits available to other citizens").

> (3) <u>The trust relationship between the United States and Indian tribes, in our case, is a bare trust according to *United States v. White Mountain Apache Tribe* with no duties running to outside parties.</u>

As part of this unique guardian-ward relationship, the Secretary of the Interior may take tribal land into trust for the respective tribe. *See e.g.* 25 U.S.C. § 465; 25 C.F.R. § 151.4 (stating that "[u]nrestricted land owned by an individual Indian or a tribe may be conveyed into trust status, including a conveyance to trust for the owner"). The "trust" that is created by these sections, unless stated otherwise in accompanying regulations, does not include a duty a manage the land itself. *See White Mountain Apache Tribe*, 537 U.S. at 473-75, 123 S.Ct. at 1133-35 (comparing the "bare trust" found in *Mitchell I* with the fiduciary obligations found in *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961 (1983)("*Mitchell II*")). Courts, after looking at the Congressional intent, have found that the trusts "impose[] *only* a duty on the United States to hold the acquired Indian lands so as to prevent continued alienation." *Hydaburg Co-op. Ass'n v. United States*, 667 F.2d 64, 68 (Ct.Cl. 1981)(emphasis added) (citing *Mitchell I*, 445 U.S. at 543-46, 100 S.Ct. at 1354-55). As clarified in *Mitchell I*, "the [statutes] . . . establish that 'the Indian allottee, and not a representative of the United States, is responsible for using the land,' that 'the allottee would occupy the land,' and that 'the allottee, and not the United States, was to manage the land.'" *White Mountain Apache Tribe*, 537 U.S. at 473, 123 S.Ct. at 1132 (quoting *Mitchell I*, 445 U.S. at 542-43, 100 S.Ct. at 1353-54). Other statutes and regulations may go beyond this "bare trust," creating more responsibilities on the part of the United States. 537 U.S. at 473-74, 123 S.Ct. at 1132-33 (noting, *e.g.,* that the 1960 Indian Tucker Act's "statutory language . . . expressly defines a fiduciary relationship"); *Mitchell II*, 463 U.S. at 224, 103 S.Ct. at 2971-72 (finding that "[i]n contrast to the [']bare trust['] created by the General Allotment Act, the statutes and regulations [concerning forest management] clearly give the Federal Government full responsibility to manage Indian [forestry] resources and land for the benefit of the Indians").

///

In the instant case, the United States' sole duty runs to the Mooretown Rancheria to "hold the acquired Indian lands so as to prevent continued alienation." *Hydaburg Co-op. Ass'n*, 667 F.2d at 68. Part 151 does not enhance this duty in any way to create any duty to plaintiffs herein.

C. THERE IS NO WAIVER OF SOVEREIGN IMMUNITY TO PERMIT PLAINTIFFS' SUIT TO GO FORWARD BECAUSE PLAINTIFFS' CLAIMS IMPLICATE THE INDIAN LANDS EXCEPTION TO THE WAIVER ORDINARILY FOUND IN THE QUIET TITLE ACT.

Under the Quiet Title Act ("QTA"), the federal government has waived sovereign immunity in disputes as to "title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a. However, sovereign immunity is reserved for property held in "trust or restricted [for] Indian lands," *id*., thus barring plaintiffs' claims as they cannot be determined without examining the terms of the easement.

The QTA is the *exclusive* means by which plaintiffs can challenge federal interests in real property. *United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 2229 (1986) (citing *Block*, 461 U.S. at 285-86, 103 S.Ct. at 1819 (same). When the QTA was drafted in the early 1970's, "the government insisted on the Indian lands exception to the waiver of sovereign immunity and pointed to its 'solemn obligations to the Indians.'" *Wildman*, 827 F.2d at 1309 (quoting Department of the Interior, *Report on S.216,* 1972 U.S.Code Cong. and Ad.News 4556, 4557). As noted by the Ninth Circuit, land constitutes the tribes'

> single most important economic resource. [Citation omitted.] The interests held by the tribes as cestuis que trust are "a unique form of property right in the American legal system, shaped by the federal trust over tribal land and statutory restraints against alienation. [Citation omitted.] The land is the essential base of tribal culture, development, and society. [Citation omitted.] As trustee, the United States acts with the jealousy of a fiduciary to protect this base.

*Id.* (quoting F. Cohen, *Handbook of Federal Indian Law* (1982 ed.) 471, 472, 509). To the extent that the merits can be probed at all is limited solely to a determination that the government has a colorable or rationale basis for asserting the Indian lands exception. *State of Alaska v. Babbitt,* 38 F.3d 1068, 1076 (9th Cir. 1994)(citing *Wildman*, 827 F.2d at 1309).

This proscription against cases challenging title, for Indian land held in trust, also applies to

cases which seek to determine the scope of an easement. *Proschold v. United States*, 244 F.Supp.2d 1027, 1031 (N.D. Cal. 2002), *aff'd*, 90 Fed. Appx. 516 (9th Cir. 2004)(table). In *Proschold*, an easement was acquired by the Government over property owned by Martha Drake. The easement was to be an alternative way to access the adjacent Reservation for the Dry Creek Rancheria Band of Pomo Indians of California. *Id.* at 1028. In 1999, the successors in interest to the Drake property learned that the tribe intended to construct a casino on the Reservation and use the easement to access that facility. *Id.* at 1029. Plaintiffs alleged that the "purpose of the easement [was] to allow access to the Reservation for residential purposes only . . . [using the easement to] access the casino [would] exceed[] the scope of the easement and would overburden the servient estate." *Id.* After finding that the government had a *colorable* claim for holding the easement in trust for the tribe, the Court applied the Indian lands exception to the Quiet Title Act. *Id.* at 1030-31. The court held that the "plaintiffs [were] barred from bringing a claim under the [Quiet Title Act], and as such, the action must be dismissed for lack of jurisdiction." *Id* at 1031. Importantly, the court never considered the issue of whether casino traffic was beyond the scope of the easement and overburdened the land. *Id.* at 1031 (stating that "[p]laintiffs' arguments go to the merits of the Government's contention, which exceeds the permissible scope of judicial inquiry."). Indeed, "[t]he immunity of the government applies whether the government is right or wrong[, as the] very purpose of the doctrine is to prevent a judicial examination of the merits of the government's position." *Wildman*, 827 F.2d at 1309.

     So it is in the instant case. Plaintiffs concede that title to the servient tenement and co-holder of the easement is held in trust by the United States for the Tribe, thus satisfying the requirement that there be a colorable claim to the assertion that the land is Indian trust land. Plaintiffs evidently believe that their assertion of various tort claims is a means of circumventing the QTA's Indian lands exception but it is not. The QTA is the *exclusive* means by which the United States' rights to property may be determined and, in the instant case, plaintiffs' tort claims cannot be addressed without first determining the scope of the subject easement and the rights of the parties thereunder. That is the very point and purpose of plaintiffs' suit: To challenge the Tribe's legal right to use its land. It is precisely this inquiry that the Courts have uniformly held to be proscribed by the Indian Lands Exception to the Quiet Title Act.

///

### D. THE FEDERAL TORT CLAIMS ACT WAIVES SOVEREIGN IMMUNITY OF THE UNITED STATES ONLY FOR ACTS OR OMISSIONS OF AN EMPLOYEE OF THE UNITED STATES.

The FTCA is a limited waiver of sovereign immunity that confers jurisdiction over tort claims against the United States arising from the negligent conduct of government employees within the scope of their employment. The statutory waiver is subject to express requirements, however, two of which are pertinent here: First, the tortious action must be by an employee of the United States. *See* 28 U.S.C. §§ 1345(b), 2675(a). Second, liability must generally occur through the fault of government employees, not on any theory of strict liability. *See id.* (stating that only actions asserting injury "caused by the negligent or wrongful act or omission of any employee of the Government" may be brought against the United States). We now turn to a discussion to each of these FTCA requirements.

#### (1) No action by an employee of the United States has been alleged

As mentioned previously, the FTCA requires a negligent act or omission by an employee of the United States. 28 U.S.C. §§ 1346(b), 2675(a). As no negligent act or omission by a federal employee is alleged in plaintiffs' complaint, there is no waiver of sovereign immunity to permit suit to go forward.

Specifically, the immunity of the United States is waived for claims seeking "money damages . . .for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee* of the Government. . . ." *Id.* (emphasis added). The determination of whether an actor is or is not a federal employee is a matter of federal law, not state law. *Hines v. United States*, 60 F.3d 1442, 1447 (9th Cir. 1995). The FTCA defines "employee" as those employed by any federal agency or military/naval force (including Federal public defender organizations except in certain circumstances) and persons acting on behalf of a federal agency in the service of the United States. 28 U.S.C. § 2671. The complaint in this action alleges only actions taken by the Tribe that allegedly encroached upon the easement. The Tribe's actions include construction of a curb and walkway, Compl. at 4 (¶ 20), constructing "water valves and a power facility," *id*. at (¶ 22), installing "wrought iron fencing," *id*. at (¶ 24), a fire hydrant, *id*. at (¶ 26), and causing "a slope/slump on the

11

north side of the easement." *Id*. at 3 (¶ 17), 8 (¶ 54). Importantly, these actions of the Tribe are not the actions of an employee of the United States, *see United States v. Enas*, 255 F.3d 662, 667 (9th Cir. 2001)(finding that tribes do not act as arms of the federal government when acting within their inherent sovereignty), and there are no acts or omissions of a federal employee identified in the Complaint.

Over thirty years ago, the Supreme Court addressed the issue of the government's liability for actions undertaken by non-federal employees. In *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215 (1973), the United States had entered into a contract with the Nueces County (Texas) Jail "to provide for the safekeeping, care, and subsistence of federal prisoners." 412 U.S. at 523, 93 S.Ct. at 2217. Plaintiffs' decedent was incarcerated at the Nueces County Jail following his arrest by the U.S. Marshal on drug charges. *Id.* There, he committed suicide. 412 U.S. at 524, 93 S.Ct. at 2218. Plaintiffs brought a wrongful death suit against the United States, claiming that the Nueces County jail was a "federal agency" by virtue of its contract with the United States and, in the alternative, that the jail employees were acting on behalf of the United States in fulfilling the terms of the contract. The Court rejected both of these theories and held that the United States could not be held liable for the torts of the jail personnel. 412 U.S. at 526-32, 93 S.Ct. at 2218-21.

Although there may be "no sharp criteria for determining whether an entity is a federal entity within the meaning of the [FTCA]. . .the critical factor is the existence of federal government control over 'the detailed physical performance' and 'day to day operation' of that entity." *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1184 (9th Cir. 2004)(quoting *inter alia Logue*, 412 U.S. at 527-28, 93 S.Ct. at 2219). There are no allegations in plaintiffs' complaint giving rise to any semblance of *federal* control over the Tribe and its actions.

Since the complaint states no action by an employee of the United States, the FTCA is inapplicable and this court lacks subject matter jurisdiction over plaintiffs' suit. The United States' sovereign immunity remains un-waived and is therefore immune from suit.[2]

---

[2] Even if action by an employee could be found, there is no duty from the United States to the plaintiffs under California Law. *See* discussion Part IV; Cal. Prob. Code § 16002 (stating that a "trustee has a duty to administer the trust *solely* in the interest of the beneficiaries." ) (emphasis added)

12

///

        (2)      <u>Even Assuming *Arguendo* that the United States Could be Held Liable as the Trustee Holding Bear Title to the Property, California Law Imposes no Liability on the Trustee unless s/he is Personally at Fault for the Alleged Tort.</u>

Assuming for the sake of argument that the United States somehow is liable to plaintiffs as the trustee holding bare title to a portion of the servient tenement, plaintiffs' claims still fail because, under California law, a trustee is immune from all claims for which s/he is not *personally* at fault.

For purposes of the FTCA, the United States shall, with respect to tort claims, be liable "in the same manner and to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674. The law of the state where the alleged negligent acts or omissions occurred provides the law of the case on the merits of the alleged negligent acts or omissions. 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 6-10, 82 S.Ct. 585, 589-91 (1962); *Yako v. United States*, 891 F.2d 738, 745 (9th Cir. 1989).

Therefore, California's law governs. Since the United States is to be treated under the FTCA as a "private individual under like circumstance[s]," 28 U.S.C. § 2674, the Court looks to the liability under California law for private individuals serving as trustees. Under California law, a "trustee has a duty to administer the trust *solely* in the interest of the beneficiaries." Cal. Prob. Code § 16002 (a)(emphasis added). More importantly, the "trustee is personally liable for torts committed in the administration of the trust *only* if the trustee is personally at fault." Cal. Prob. Code § 18002 (emphasis added). The trustee is also "personally liable for obligations arising from ownership or control of trust property *only* if the trustee is personally at fault." Cal. Prob. Code § 18001 (emphasis added). "Personally at fault" requires a showing of intentional or negligent conduct on the part of the trustee. *Haskett v. Villas at Desert Falls,* 90 Cal. App.4th 864, 878 (Cal.App.4.Dist. 2001)("A trustee who . . . acted in his representative capacity cannot be held personally liable under section 18001 for an obligation . . . solely upon a showing that the obligation arose out of his ownership or control of the trust property. The imposition of such personal liability must also rest on a finding of personal fault supported by a sufficient showing that the trustee's conduct was intentional or negligent."). Nothing in the relevant California Probate Code sections 18000 through 18005 impose a duty on trustees to third parties for acts of the beneficiary.

13

1  ///

2  Plaintiffs clearly detail in their complaint that all of the actions complained of are the actions
3  of the Tribe and not of the defendants in this action. Moreover, the trustee's *clear* statutory duty is to
4  "administer the trust *solely* in the interest of the beneficiaries." Cal. Prob. Code § 16002 (a)(emphasis
5  added). Inasmuch as the Tribe is immune from suit, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49,
6  58, 98 S.Ct. 1670, 1677 (1978), plaintiffs herein attempt instead to sue the United States. The Tribe's
7  immunity cannot be subverted by bringing suit against the United States as trustee for actions of the
8  tribe. *United States v. Karlen*, 476 F.Supp. 306, 309 (D.S.D. 1979). Therefore, plaintiffs' suit must
9  be dismissed for lack of subject matter jurisdiction in its entirety.

### III. CALIFORNIA CIVIL CODE SECTIONS 832 AND 3479 DO NOT PROVIDE PLAINTIFFS WITH A CAUSE OF ACTION AGAINST A TRUSTEE

Plaintiffs cite California Civil Code §§ 832 and 3479 presumably as support for their claims under the FTCA. Compl. at 2 (¶ 4). Section 832 states that "[e]ach coterminous *owner* is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction or improvement." Cal. Civ. Code § 832 (emphasis added). Excavations are subject to the condition that if the "excavation is intended to be or is deeper than the standard depth of foundations, which depth is defined to be a depth of nine feet below the adjacent curb level, at the point where the joint property line intersects the curb . . . then the owner of the land on which the excavation is being made shall, if given the necessary license to enter on the adjoining land, protect the said adjoining land . . . from any damage by reason of the excavation, and *shall* be liable to the *owner* of such property for any such damage, excepting only for minor settlement cracks in buildings or other structures." *Id*. (4) (emphasis added).

Owner is defined in Black's Lack Dictionary as "[o]ne who has the *right* to *possess*, *use*, and *convey* something; a person in whom one or more interests are vested." Black's Law Dictionary (8th ed. 2004) (emphasis added). The United States as trustee of the Tribe's land is unable to freely convey the land. *See Fort Mojave Indian Tribe v. United States*, 23 Cl.Ct. 417, 424 (Cl.Ct. 1991) (stating that the purpose of holding the land in trust for the Indians is to "prevent alienation of the

14

land and to ensure . . . immun[ity] from state taxation."). Additionally, the United States is unable to freely *possess* or *use* the land without interfering with the sovereignty of the Tribe. In this case, the actions were all taken by the Tribe and not by the United States as trustee. *See e.g. id*. at 5 (¶¶ 33-34); 6 (¶¶ 41-42); 7 (¶ 45-47). Moreover, the United States does not even hold title to that portion of the land where there is alleged erosion of the subjacent and lateral support. Since the United States is not the "owner" of the subject property, this section does not apply.

California Civil Code section 3479 is also inapplicable to the present action. Section 3479 defines nuisance as "obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property," or the "unlawful[] obstruct[ion of] free passage or use, in the customary manner, of . . .[any] street, or highway." Cal. Civ. Code § 3479. The first definition of nuisance, "interfer[ing] with the comfortable enjoyment of life or property," does not apply to the present situation. *Id*. The plaintiff's non-exclusive easement is 60 feet wide, Compl. at 1 (¶ 1), and is used to access their undeveloped property. *Id*. at 2 (¶ 2). The largest encroachment described in the complaint is a "slope/slump within and on the northeast side" that is 20 feet wide and either 100 or 150 feet long. Compl. at 3 (¶ 17), 8 (¶ 54) (describing two different lengths for the slope/slump). Even assuming the encroachment is as alleged, there still remains 40 feet of unaffected easement. The plaintiffs do not have an exclusive right to use the easement. The plaintiffs have not alleged that the dominant parcel is affected by any encroachment, nor have they alleged that they are unable to access their dominant parcel due to the encroachments. Consequently, the plaintiffs have failed to describe any actions by the United States that "interfere with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479.

The second definition of nuisance, "unlawfully obstruct[ion of] free passage or use, in the customary manner, of . . .[any] street, or highway," is equally unavailing. *Id*. The complaint contains no allegations that the plaintiffs' passage on the easement has been obstructed. Most importantly, neither § 3479 or § 832 provides an enforceable duty against the United States for the actions of the Tribe. The causes of action are against the *owner* of the property and not the United States as trustee. Since the United States is not the owner of the property, no valid claim is stated under the FTCA.

///

///

### IV. THE RANCHERIA IS A NECESSARY AND INDISPENSABLE PARTY THAT CAN NOT BE JOINED, THEREFORE THE ACTION MUST BE DISMISSED

Under Fed.R.Civ.P. 19, the court conducts a two-step analysis to determine whether an absent party must be joined in an action and whether the case must be dismissed if the party cannot be joined. *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996). First, the court determines whether the absent party is "necessary." Fed. R. Civ. P. 19(a). If the absent party is "necessary" to the suit, and if that party cannot be joined, the court must assess "whether the party is 'indispensable' so that in equity and good conscience the suit should be dismissed." Fed. R. Civ. P. 19(b); *Kescoli*, *supra*; *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1458 (9th Cir. 1994); *Shermoen*, 982 F.2d at 1317; *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

#### A. THE RANCHERIA IS A NECESSARY PARTY

To determine whether an absent party is necessary, "[f]irst, the court must consider if complete relief is possible among those parties already in the action. Second, the court must consider whether the absent party has a legally protected interest in the outcome of the action." *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991); Fed.R. Civ.P. 19(a)(1)&(2). Meeting either of these two conditions satisfies Rule 19(a). *Id.* The determination of whether a party is necessary under Rule 19 "is heavily influenced by the facts and circumstances of each case." *Confederated Tribes*, *supra*.

In the instant case, plaintiffs' challenge is fundamental to the Tribe: They challenge actions taken by the Tribe to enhance the safety of its members as well as members of the public (installation of fencing, curb, walkway and fire hydrant) and to facilitate the delivery of utilities (installation of water valves and power boxes); plaintiffs also challenge actions by the Tribe in the use of its land when they challenge the manner in which a parking lot was constructed. All of these actions are actions by a quasi-sovereign entity exercising appropriate governing powers. Adjudicating the instant dispute in the absence of the Tribe only undermines the Tribe's sovereignty, its right to self-governance, and its right of self-determination. Moreover, plaintiffs will be unable to cite any means by which the United States can compel the Tribe to provide the relief sought by plaintiffs. Therefore,

16

any judgment against the United States in this matter would not constitute adequate relief.

In short, the Tribe is a "necessary party" because any judgment issued against the United States as trustee would not be binding upon the Tribe itself. All of the alleged actions were taken by the Tribe; none were taken by any employees of the United States. Additionally, since the actions were taken by the Tribe, the United States lacks full and complete knowledge of actions that were taken. The Tribe is necessary to provide complete relief in this action.

### B. THE RANCHERIA IS AN INDISPENSABLE PARTY

The Ninth Circuit has recognized that immunity itself "may be viewed as the compelling factor" for finding an Indian tribe indispensable under Rule 19(b). *Quileute Indian Tribe*, 18 F.3d at 1460; *see also Kescoli*, 101 F.3d at 1311. "Thus, dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." *Quileute Indian Tribe*, 18 F.3d at 1461 (quoting *Enterprise Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 984 (10th Cir. 1989)). Dismissal is "proper where [the] indispensable party [is an] Indian tribe that enjoys sovereign immunity from suit." *Quileute Indian Tribe*, 18 F.3d at 1460; *Confederated Tribes*, 928 F.2d at 1499 (citing *Enterprise Mgmt. Consultants*, 883 F.2d at 894).

While the Tribe's immunity is the compelling factor, courts nonetheless apply Rule 19(b)'s four-part test to determine whether Indian tribes are indispensable. *Quileute Indian Tribe*, 18 F.3d at 1461; *Confederated Tribes*, 928 F.2d at 1499. The following factors are considered: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the ab sent party; and (4) whether an alternative forum exists. Fed.R.Civ.P. 19(b). When the "first and second factors, . . . heavily favor[] a finding of indispensability, [they outweigh] the third and fourth factors," and the Tribe may be found to be "indispensable." *Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992). The analysis of these factors is somewhat duplicative of the factors addressed as to the necessity issue.

A party will suffer prejudice where that party has legal interests that render it a necessary party to the action. *Confederated Tribes*, 928 F.2d at 1499 (noting that the prejudice test is essentially the same as the legal interest test); *Quileute Indian Tribe*, 18 F.3d at 1460. In *Confederated Tribes*, the court found that the tribe would suffer prejudice because if plaintiffs

17

prevailed "it would presumably alter the [Tribe's] existing authority to govern the reservation." *Confederated Tribes*, 928 F.2d at 1499.  Similarly, in *Pit River Home*, 30 F.3d at 1101, the court found that any finding in favor of plaintiff's right to govern would necessarily prejudice the Council's right to govern the tribe and, accordingly, the tribe was indispensable.

Likewise here, any relief granted against the Tribe would be unenforceable and interfere with its tribal governance.  The requested relief would require removal of utility equipment, removal of safety structures, and alteration of land management techniques.  As stated, the United States lacks authority to bind the Tribe to any judgment.  If the Tribe were to take any action, the requested remedy would disrupt essential attributes of tribal sovereignty.  Additionally, any judgment against the United States may damage the existing relationship between the Tribe and the federal government.

There is no partial, compromise, or shaped remedy that would avoid prejudice to the Tribe. The fact that the Tribe could intervene in the action is not a factor that lessens prejudice where such intervention would require a waiver of sovereign immunity.  *Confederated Tribes*, 928 F.2d at 1500 (citing *Makah Indian Tribe*, 910 F.2d at 560).  Nor can adequate relief be awarded without the Tribe. There is no relief that plaintiffs seek that would not prejudice the interests of the Tribe.  No relief can be granted that is binding upon the tribe.  Any relief granted against the United States may strain the relationship between the Tribe and the federal government by requiring the United States to attempt to interfere with essential attributes of tribal sovereignty.

No alternative forum exists.  The lack of an alternative forum is not determinative in the analysis under Rule 19(b). *See Shermoen*, 982 F.2d at 1319 (affirming the district courts' finding of indispensable party even though it would leave the plaintiff without a forum). Even though finding the Tribe indispensable "effectively denies [the plaintiffs] a forum in which to have some of their grievances heard[,] . . . 'Congress' authority over Indian matters is extraordinarily broad, and the role of courts in adjusting relations between and among tribes and their members [is] correspondingly restrained.'" *Id*. at 1320-21 (citations omitted). In *Shermoen*, the 70 Native Americans and a community of Yurok Indians brought suit against the United States, the Department of the Interior, and the Bureau of Indian affairs challenging the constitutionality of the Hoopa-Yurok Settlement

Act.. *Id*. at 1316. The Act "partition[ed] the reservation into two reservations, designating the Square as the 'Hoopa Valley Reservation' and the Extension as the 'Yurok Reservation.'" *Id*. (citations omitted). The District Court and the Ninth Circuit Court of Appeals, in dismissing the case under Rule 19(b), found that the "absent Hoopa Valley and Yurok tribes were indeed indispensable parties and immune from suit." *Id*. at 1317, 1321. As in this case, the "relief sought [in *Shermoen*] would prevent the absent tribes from exercising sovereignty over the reservations allotted to them by Congress." *Id*. at 1320. As with some matters, the plaintiffs may be without remedy due to the sovereign immunity of the tribes. The fact that there is no alternate forum does not preclude a finding of indispensability. The Tribe is indispensable.

### C. THE RANCHERIA CAN NOT BE JOINED AS A PARTY TO THIS SUIT

Because the Tribe is a quasi-sovereign entity, it has immunity from suit except to the extent that it chooses to waive its immunity or Congress legislatively abolishes the Tribe's immunity.

Indian tribes are "distinct, independent political communities, retaining their original natural rights" in matters of local self-government. *Santa Clara Pueblo*, 436 U.S. at 55, 98 S.Ct. at 1675 (quoting *Worcester v. Georgia*, 6 Pet. 515, 559 (1832)). "[Tribes] remain a 'separate people, with the power of regulating their internal and social relations.'" *Id*. (quoting *United States v. Kagama*, 118 U.S. 375, 381-82, 6 S.Ct. 1109, 1112-13 (1886)). "[Tribes] have power to make their own substantive law in internal matters, [citations omitted], and to enforce that law in their own forums." *Id*. (citation omitted). Immunity from suit preserves and fosters tribal self-government and independence, *United States v. Oregon*, 657 F.2d 1009, 1013 (9th Cir. 1982) (Kennedy, J.), and extends to conduct within the scope of the tribe's sovereign powers, *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1321 (9th Cir. 1983), *cert. denied*, 467 U.S. 1214 (1984).

The doctrine of tribal sovereign immunity provides a litigation shield to federally-recognized Indian tribes in recognition of the tribes' status as quasi-sovereign nations subject only to the superior sovereignty of the United States. "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677; *Pit River Home & Agric. Coop. Assoc. v. United States*, 30 F.3d 1088, 1100 (9th Cir. 1994). Waiver of tribal immunity "cannot be implied but rather must be

unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58-59, 98 S.Ct. at 1677; *Pit River*, 30 F.3d at 1100 (quoting *Oklahoma Tax Comm. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509, 111 S.Ct. 905, 909 (1991)). Thus, "absent tribes, while necessary, cannot be joined due to their sovereign immunity." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992), *cert. denied*, 509 U.S. 903 (1993). This action must be dismissed under Fed.R.Civ.P. 12(b)7 for failure to join a necessary party under Rule 19.

## CONCLUSION

For the reasons set forth above, defendants respectfully seek dismissal of plaintiffs' suit because the court lacks subject matter jurisdiction. Alternatively, defendants seek summary judgment on the merits of the plaintiffs' claims. Additionally, because the Tribe is an indispensable party that cannot be joined, this suit must be dismissed.

Respectfully submitted,

DATED: April 15, 2005

McGREGOR W. SCOTT
United States Attorney

/s/ Debora G. Luther

By: _____
DEBORA G. LUTHER
Assistant U. S. Attorney
Attorneys for Defendants