IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS ROBINSON; SPENCER ROBINSON, JR.; RICKIE ROBINSON; CYNTHIA ROBINSON; VICKIE ROBINSON,

    Plaintiffs,
  v.

UNITED STATES OF AMERICA, as trustee for the Indians of the Mooretown Rancheria, aka MAIDU INDIANS OF CALIFORNIA; DEPARTMENT OF THE INTERIOR [BUREAN OF INDIAN AFFAIRS]; and DOES 1 through 50, inclusive,

    Defendants.          /

No. Cv. S-04-0734 RRB KJM

Memorandum of Opinion
      and Order

    Plaintiffs Dennis Robinson, Spencer Robinson, Jr., Cynthia Robinson, and Vickie Robinson allege that the United States interfered with their easement for road and utility purposes. Defendants move to dismiss for lack of jurisdiction or, in the alternative, seek summary judgment on all claims. For the

following reasons, the court GRANTS the motion to dismiss for lack of subject matter jurisdiction.

I.

In the mid-1970s, Spencer Robinson, Sr., Clint Miller and their respective spouses purchased 620 acres of land in Butte County, with the intent to jointly develop the land.  Robinson Decl. ¶ 3.  In 1978, Robinson and Miller built a twenty-foot wide, two-lane road designated "Alverda Drive."  Id.  On September 26, 1979, the owners entered into a "Road Maintenance Agreement," stating that the parties agreed to: (1) bear the expenses of maintaining the subject roadway and drainage facilities; (2) "bring actions in any court of competent jurisdiction in the County Butte to enforce collection of any monies due from any owner as their proportionate share of the reasonable maintenance or repair of said works;" and (3) be bound by the decision of the owners of a majority of the subject parcels when deciding whether repair or maintenance work is necessary.  Rim Decl. Ex. 1.  The agreement "is to be construed as running with the land, and it is further understood and agreed that this agreement shall inure to and bind the successors in interest of the parcels owned by all the parties hereto."  Id.

On September 19, 1980, the Millers gifted a portion of the property to the Robinson and included in the deed a sixty-foot

wide "non-exclusive right-of-way for the road and public utilities" over the remaining share of the property.  Pls.' Request for Judicial Notice Ex. 3.  The right-of-way included the twenty-foot wide portion of the property used for Alverda Drive.  Id.  Another grant deed from the Millers to the Robinsons, containing the same easement, was recorded on November 7, 1980.  Id. Ex. 4.

Through subsequent property transactions, the Maidu Indians of California (hereafter, "Mooretown Rancheria"), purchased three parcels of land previously owned by the Millers and adjacent to land currently owned by the Racheria.  Id. Exs. 5-9, 12.  Mooretown Rancheria then transferred the three parcels to the United States, to hold in trust.  Id. Exs. 5-9, 12.  The Robinson family retained ownership in approximately 360 acres of land east of the Racheria property and has continuously used Alverda Drive to access their property.

In late 2000, Mooretown Rancheria began building a permanent casino on one of the parcels purchased from the Millers.  Shortly thereafter, the Robinsons complained that the Rancheria was placing illegal encroachments in the easement. The parties discussed the complaints but were unable to reach a resolution.  On April 12, 2004, the Robinsons filed this suit complaining of the following easement encroachments: (1) water valves and power facilities; (2) a walkway; (3) a wrought iron

fence; (4) a bullnose curb; (5) a fire hydrant; (6) an unshored slope, causing subsidence; and (7) "alligatoring" on the edges of the road.  Based on these encroachments, the Robinsons assert eight claims against the United States and unnamed federal employees: (1) damage of lateral support and subsidence, Cal. Civ. Code § 832; (2) common law damage to subjacent support; (3) common law strict liability property damage; (4) common law negligent property damage; (5) the continuing nuisance of property damage, Cal. Civ. Code § 3479; (6) the continuing nuisance of encroachment, id.; (7) the continuing nuisance of obstruction of the road to plaintiffs' property, id.; and (8) injunctive relief based upon the previously claimed continuing nuisances.  For relief, the Robinsons seek: (1) a preliminary and permanent injunction requiring removal of the current encroachments and barring any further encroachment; (2) an order requiring the building, rebuilding, or restoration of a retaining wall to remedy the effects of subsidence caused by defendants' conduct; and (3) damages.

On April 15, 2005, defendants filed this motion to dismiss or, in the alternative, for summary judgment.  Defendants argue that: (1) the court lacks subject matter jurisdiction due to sovereign immunity; (2) the Robinsons fail to state a claim under California law against the United States; and (3) Mooretown Rancheria is a necessary and indispensable party that

4

cannot be joined because of tribal sovereign immunity. Following a hearing and additional briefing, the parties requested a stay of the case. On January 30, 2006, the court granted the motion. Following the expiration of the stay, the court now decides the previously filed and argued motion.

II.

Defendants move to dismiss the Robinsons' claims under Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacks subject matter jurisdiction to hear the action. The party seeking to invoke the jurisdiction of the court carries the burden of putting forth facts establishing jurisdiction. Scott v. Breeland, 792 F.2d 925, 926 (9th Cir. 1986). Unlike other Rule 12 motions, no presumption of truthfulness attaches to plaintiffs' allegations when deciding whether jurisdiction exists. Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

The United States cannot be sued unless it has clearly waived sovereign immunity for the particular claims faced. United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). Waivers of sovereign immunity are construed in favor of the United States unless Congress suggests a contrary intent. United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992). A plaintiff must show an unequivocal waiver of immunity to

pursue its claims against the government.[1]  Baker v. United States, 817 F.2d 560, 562 (9th Cir. 1987).  Defendants argue that neither the Quiet Title Act nor the Federal Tort Claims Act is sufficient to confer jurisdiction over the Robinsons' claims. The statutes are discussed individually below.

A.   The Quiet Title Act

The Quiet Title Act, 28 U.S.C. § 2409a, provides the exclusive means by which a plaintiff may sue the United States concerning title to real property.  Block v. North Dakota, 461 U.S. 273, 286 (1983).  "[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: 1) the United States must claim an interest in the property at issue; and 2) there must be a disputed title to real property between interests of the plaintiff and the United States."  Leisnoi Inc. v. United States, 267 F.3d 1019, 1023 (9th Cir. 2001).  The "Indian Land Exception" to the Quiet Title Act states that the Act's waiver of sovereign immunity "does not apply to trust or restricted Indian Lands."  28 U.S.C. § 2409a(a).  To invoke the exception, the government need only

---

[1]  The "Road Maintenance Agreement," binding upon the parties as successors-in-interest, specifies Butte County as the forum for the resolution of disputes.  Rim Decl. Ex. 1.  However, it does not contain language expressly or unequivocally waiving sovereign immunity for the government or the Rancheria. The Robinsons do not demonstrate that sovereign immunity has been waived by the property agreements to which the government is now a party.  See Nordic Village, Inc., 503 U.S. at 34.

put forth a "colorable claim" that the lands are held in trust for an Indian tribe. <u>Wildman v. United States</u>, 827 F.2d 1306, 1309 (9th Cir. 1987).

Defendants argue that the Robinsons' claims fall within the scope of the Quiet Title Act and that the suit is barred by the Indian Land Exception.  The Robinsons reply that the Quiet Title Act applies only to suits "to adjudicate a disputed title," 28 U.S.C. 2409a(a), and that there is no disputed title in this case.  This argument fails.  Allegations that the government has interfered with an easement are sufficient to create a "disputed title" for purposes of the Quiet Title Act.  Claims related to the existence of an easement, <u>Schultz v. Dep't of Army</u>, 886 F.2d 1157 (9th Cir. 1989), and the overburdening of an easement, <u>Narramore v. United States</u>, 852 F.2d 485 (9th Cir. 1988), fall within the scope of the Quiet Title Act.  The Ninth Circuit has not directly addressed whether allegations of easement encroachments create a disputed title.  Under California law, however, there are numerous examples of quiet title actions brought by dominant tenement holders seeking to end alleged encroachment on an easement.[2]  <u>See</u>, <u>e.g.</u>, <u>Van Klompenburg v.</u>

---

[2]  The Quiet Title Act is a federal statute and must be interpreted in accordance with principles of federal law.  "But state law, if compatible with the purpose of [the statute in question], may be resorted to in order to find the rule that will best effectuate the federal policy."  <u>Textile Workers v.</u>

Berghold, 126 Cal.App.4th 345, 350 (2005) (seeking to quiet title by obtaining an injunction ordering the removal of gates blocking plaintiff's easement); Pacific Gas & Elec. Co. v. Hacienda Mobile Home Park, 45 Cal.App.3d 519, 529 (1975) (seeking to quiet title by obtaining an injunction ordering defendants to cease placing mobile homes on plaintiff's easement).  Therefore, the court finds that the alleged encroachments on the Robinsons' easement creates a dispute as to title.³  Because the disputed title is for Indian land held in trust by the government, the Act's Indian Land Exception applies and this court lacks jurisdiction to hear the Robinsons' claims. 28 U.S.C. 2409a(a).

---

Lincoln Mills, 353 U.S. 448, 457 (1957).  Here, California property law does not conflict with federal law interpreting Quiet Title Act.  Moreover, by promoting a consistent standard as to permissible encroachment upon easements, the application of California law to this dispute serves the federal policy of ensuring that "[t]he United States shall not be disturbed in possession or control of any real property."  28 U.S.C. § 2409a(b).

³   Holding the alleged encroachments to create a disputed title is also consistent with the purpose of the Quiet Title Act's Indian Land Exception.  The Exception was created to prevent third parties from interfering with the government's discharge of its responsibilities to Indian tribes and their lands held in trust.  Metro. Water Dist. v. United States, 830 F.2d 139, 143-44 (9th Cir. 1987).  If the court were to hold that the encroachments did not create a disputed title, third parties, such as the Robinsons, would be able to interfere with the land trust relationship between the government and Indian tribes by pleading around the Quiet Title Act.

B.   The Federal Tort Claims Act

The Robinsons argue that because their claims are addressed to the individual actions of government employees, rather than the government's interest in the disputed easement, the Federal Tort Claims Act provides jurisdiction.  This argument fails due to the exclusivity of the Quiet Title Act.  Block, 461 U.S. at 286.  "If we were to allow claimants to try the Federal Government's title to land under an officer's-suit theory,[4] the Indian lands exception to the QTA would be rendered nugatory."  Id. at 285.  The Robinsons' alleged FTCA claims rely upon property documents to establish duties regarding the subject easement.  See Pls.' Request for Judicial Notice Ex. 3.  A determination as to whether federal employees violated the terms of those documents would necessarily entail decisions as to the scope of the easement.  As discussed above, in making such judgments, the court resolves matters of disputed title.  The decisions, therefore, are made under the Quiet Title Act and jurisdiction is barred by the Indian Lands Exception.  28 U.S.C.

---

[4]   "In the typical officer's suit involving a title dispute, the claimant would proceed against the federal officials charged with supervision of the disputed area, rather than against the United States. The suit would be in ejectment or, as here, for an injunction or a writ of mandamus forbidding the defendant officials from interfering with the claimant's property rights."  Block, 461 U.S. at 281.

2409a(a).  The Robinsons' artful pleading does not create jurisdiction.  Block, 461 U.S. at 285.

III.

For these reasons, the court GRANTS the motion to dismiss.

IT IS SO ORDERED.

ENTERED this 4th day of September, 2007.

            S/RALPH R. BEISTLINE
            United States District Judge