IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

<table>
<tr><td>
DENNIS ROBINSON; SPENCER<br>
ROBINSON, JR.; RICKE ROBINSON;<br>
CYNTHIA ROBINSON; and VICKIE<br>
ROBINSON,<br>
<br>
     Plaintiffs,<br>
<br>
   vs.<br>
<br>
UNITED STATES OF AMERICA, as<br>
Trustee for the Indians of the Mooretown<br>
Rancheria, aka MAIDU INDIANS OF<br>
CALIFORNIA, DEPARTMENT OF THE<br>
INTERIOR [BUREAU OF INDIAN<br>
AFFAIRS]; and DOES 1 – 50, inclusive,<br>
<br>
     Defendants.
</td>
<td>
Case No. 2:04-cv-00734-RRB-DAD<br>
<br>
ORDER<br>
[Re:  Motion at Docket No. 70]
</td></tr>
</table>

## I.  MOTION PRESENTED

At Docket No. 70 defendants United States of America, as Trustee for the Indians of the

Mooretown Rancheria, aka Maidu Indians of California, and the Department of Interior [Bureau

of Indian Affairs] ("Government") have moved to dismiss the complaint for lack of subject

matter jurisdiction.  Plaintiffs Dennis Robinson, Spencer Robinson, Jr., Ricke Robinson, Cynthia

Robinson, and Vickie Robinson ("Robinson") have opposed the motion, and the Government has

replied.

At Docket No. 73 Robinson has requested the court take judicial of various documents. This request is granted.[1]

At Docket No. 81 Robinson has requested oral argument.  The Court having determined that oral argument would not materially assist in deciding the motion before the court, the request for oral argument is DENIED.  The motion is submitted on the moving and opposing papers.

## II.  BACKGROUND/PROCEDURAL HISTORY

### A.  Nature of the Action

Robinson, the holder of the dominant tenement, brings this suit against the Government seeking relief under various statutory and common law causes of action related to an easement across property held in trust by the United States for the Indians of the Mooretown Rancheria, also known as the Maidu Indians of California ("Tribe").  The factual background underlying the various causes of action alleged in the lawsuit is well known to the parties and is set forth in detail in the decision of the Ninth Circuit in *Robinson v. United States*.[2]  In the interests of brevity, those facts are not repeated here except to the extent necessary to an understanding of this decision.

This lawsuit arises out of the construction of homes and a casino by the Tribe on land subject to the easement.  Robinson alleges eight causes of action, asserting claims for disruption of lateral and subjacent support, negligence, and nuisance.  Robinson alleges that as a result of the construction activities by the Tribe, an unshored slope caused subsidence and that a curb, concrete walkway, wrought iron fence, and fire hydrant encroach onto the easement.  The First

---

[1] Fed. R. Evid. 201.

[2] 586 F.3d 683 (9th Cir. 2009).

ORDER [Re: Motion at Docket 70], *Robinson v. United States*, 2:04-cv-00734-RRB-DAD - 2

Count seeks damages for the loss of lateral support; the Second Count seeks damages for loss of subjacent support; the Third Count seeks damages under a strict liability theory for loss of lateral support; the Fourth Count seeks damages under a negligence theory for loss of lateral and subjacent support; the Fifth Count sounds in nuisance and seeks abatement; the Sixth Count alleges a continuing nuisance and seeks injunctive relief; the Seventh Count also alleges a continuing nuisance and seeks injunctive relief; and the Eighth Count, incorporating all the prior allegations, seeks injunctive relief.

Robinson contends that the United States knowingly and intentionally approved, or has since supported, the Tribe's construction of the improvements and related activities that damaged and interfered with the easement.  Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1346(b), and 2671, *et seq.*

**B.  Procedural Background**

The Government moved to dismiss the complaint on the grounds that the action was brought under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a.  The Government argued that the waiver of the Government's immunity under the QTA did not extend to trust or restricted Indian lands.  This court agreed, granted the Government's motion and dismissed the lawsuit for lack of jurisdiction.  Robinson appealed.  The Ninth Circuit, holding that the QTA did not apply, vacated the dismissal and remanded the matter to determine whether jurisdiction lies under the Federal Torts Claim Act ("FTCA") [28 U.S.C. §§ 1346(b), 2671, *et seq.*].[3]

---

[3] *Robinson*, 586 F.3d at 688.

### III.  ISSUES PRESENTED

The Government contends that subject matter jurisdiction is lacking in that: (1) the United States has not waived its sovereign immunity; (2) the Robinsons have not exhausted their administrative remedies under the FTCA; and (3) the Maidu Tribe is an indispensable party.[4/]

### IV.  APPLICABLE LAW

The complaint must contain a short, plain statement of the grounds for the court's jurisdiction.[5/]  The defenses that the court lacks subject matter jurisdiction and failure to join an indispensable party are brought by motion.[6/]

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute, which may not be expanded by judicial decree.[7/]  Any order or judgment entered by a court lacking subject matter jurisdiction is a nullity and void.[8/]  It is presumed that a cause lies outside this limited jurisdiction,[9/] and the burden of establishing jurisdiction rests upon the party asserting jurisdiction.[10/]  A federal court always has a duty to examine its own subject-matter jurisdiction,[11/] and may raise the question *sua sponte*.[12/]  Subject matter jurisdiction cannot

---

[4/] The Government also contends that the Bureau of Indian Affairs is not a proper defendant. The court agrees.  That defect may, however, be easily cured by amendment.

[5/] Fed. R. Civ. P. 8(a)(1).

[6/] Fed. R. Civ. P. 12(b)(1), (7).

[7/] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

[8/] *Orff v. United States*, 358 F.3d 1137, 1149 (9th Cir. 2004), *aff'd*, 545 U.S. 596 (2005).

[9/] *Id.*

[10/] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

[11/] *Id.* at 230–31.

[12/] *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

ORDER [Re: Motion at Docket 70], *Robinson v. United States*, 2:04-cv-00734-RRB-DAD - 4

be waived, conferred by either the actions or consent of the parties, or conferred under the principles of estoppel.[13]   "It is along-settled principle that [jurisdiction] cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record."[14]

Sovereign immunity is an important limitation on the subject matter jurisdiction of federal courts.  The United States may only be sued to the extent that it has waived its sovereign immunity.[15]  In terms of its scope, a waiver of sovereign immunity is strictly construed in favor of the sovereign.[16]  Sovereign immunity cannot be waived by implication, but must be unequivocally expressed.[17]

Exhaustion of remedies, a part of sovereign immunity, is also jurisdictional.[18]   An action may not be brought under the FTCA, "unless the claimant shall have first presented the claim to the appropriate Federal agency and the claim shall have been finally denied by the agency in writing and sent by certified or registered mail."[19]

---

[13] *Id.*

[14] *FW/PBS, Inc.*, 493 U.S. at 231 (citations and internal quotation marks omitted).

[15] *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941) and *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (*Mitchell II*)).

[16] *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).

[17] *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. King*, 395 U.S. 1, 4 (1969) (citing *Sherwood*).

[18] *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir. 2009); *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

[19] 28 U.S.C. § 2675(a).

Where subject matter jurisdiction is lacking, the complaint must be dismissed.[20]  A complaint should not, however, be dismissed for lack of subject matter jurisdiction without leave to amend unless the complaint cannot be amended to cure the jurisdictional defect.[21]  Leave to amend need not be given, however, where the amendment would be futile.[22]

Joinder of an indispensable party is a three-step process.[23]  First, the court must determine whether the party sought to be joined is a "necessary" party.[24]  Second the court must determine whether joinder is feasible.[25]  Third, if a person who is required to be joined if feasible cannot be joined, the court must determine whether the action should proceed among the existing parties or should be dismissed.[26]  In making this determination, the court considers four factors: (1) prejudice to the absent person or the parties; (2) the extent to which the prejudice may be lessened or avoided; (3) adequacy of a judgment in the absence of the party; and (4) the adequacy of an alternative remedy if the action is dismissed.[27]

---

[20] Fed. R. Civ. P. 12(h)(3); *Oregon v. Legal Services Corp.*, 552 F.3d 965, 972 (9th Cir. 2009).

[21] *See Harris v. Amgen, Inc.*, 573 F.3d 728, 736 (9th Cir. 2009).

[22] *Townsend v. University of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008).

[23] *Equal Emp't Opportunity Comm'n v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).

[24] *Id.*; Fed. R. Civ.P. 19(a).

[25] *Peabody*, 400 F.3d at 779; Fed. R. Civ. P. 19(a).

[26] *Peabody*, 400 F.3d at 779; Fed. R. Civ. P. 19(b).

[27] *Id.*; *see Schnabel v. Lui*, 302 F.3d 1023, 1030–31 (9th Cir. 2002).

## V.  DISCUSSION

### A.  Sovereign Immunity (United States)

The Ninth Circuit remanded the case to this court to determine in the first instance whether jurisdiction lies under the FTCA.  Robinson appears to suggest that, because the Ninth Circuit opined that the claims were cognizable under the FTCA, this court is bound by that finding and, therefore, jurisdiction lies under the FTCA.  Robinson's suggestion misses the point.  Strictly speaking, in the jurisdictional context, the question is not whether a claim is cognizable under the FTCA generally, but whether the claim is cognizable under § 1346(b).[28/]  A distinction that Robinson fails to grasp.[29/]  It is § 1346(b) that confers jurisdiction on district courts under the FTCA.[30/]

> Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and "render[ed]" itself liable.  *Richards v. United States,* 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962).  This category includes claims that are:
> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, [. . .] [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).[31/]

---

[28/] *See Meyer*, 510 U.S. at 477 n.5.

[29/] This is exemplified by the arguments advanced describing the *types* of claims cognizable under the FTCA.  In this case, claims sounding in tort.  A claim may be of the *type* cognizable under the FTCA, but not within the *jurisdiction* of the court.

[30/] *See Smith v. United States*, 507 U.S. 197, 206 (1993).

[31/] *Meyer*, 510 U.S. at 477.

All six elements listed must coalesce for jurisdiction to lie under § 1346(b).[32/]  For the purposes

of this discussion, the court assumes that the first and third elements are satisfied.  The court

further assumes that the first four counts satisfy the second element.[33/]  The court also assumes

that, with respect to the sixth element, the complaint alleges causes of action adequate to

establish that a private person would be liable under the laws of the State of California.[34/]

Jurisdiction is conferred in this case only if the United States, as the trustee holding

Indian lands, has waived its sovereign immunity to be sued by a third party under the FTCA for

acts committed by the beneficiary Tribe.  For the reasons that follow, this court holds that the

United States has not waived its sovereign immunity.

The Tribe is neither a Federal agency, nor are its employees and agents employees of the

United States.

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term
> "Federal agency" includes the executive departments, the judicial and legislative
> branches, the military departments, independent establishments of the United
> States, and corporations primarily acting as instrumentalities or agencies of the
> United States, but does not include any contractor with the United States.
> "Employee of the government" includes (1) officers or employees of any federal
> agency, members of the military or naval forces of the United States, members of
> the National Guard while engaged in training or duty under section 115, 316, 502,
> 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an
> official capacity, temporarily or permanently in the service of the United States,
> whether with or without compensation, and (2) any officer or employee of a
> Federal public defender organization, except when such officer or employee
> performs professional services in the course of providing representation under
> section 3006A of title 18.

---

[32/] *Id.*

[33/] The fifth through eighth counts seek relief other than monetary damages.  Thus, they are not
within the jurisdictional scope of § 1346(b).  Therefore, those counts must be dismissed.

[34/] That is, that the claims are of the *types* of claims cognizable under the FTCA.  This is not to be
construed that, in this case, the United States is such a person.  As discussed further below, it is not.

"Acting within the scope of his office or employment", in the case of a member of the military or naval forces of the United States or a member of the National Guard as defined in section 101(3) of title 32, means acting in line of duty.[35/]

Because the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception.[36/] "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed performance of a contractor.'"[37/] Assuming that the United States had authority to approve the plans of the Tribe and reserved the power to ensure that the plans, and their implementation, complied with all applicable restrictions, unless the United States actually supervised and controlled the day-to-day operations of the construction project, the Tribe was an independent contractor, not an employee.[38/] Thus, the actions of the Tribe cannot be attributed to the United States for the purpose of imposing liability under the FTCA.

Robinson's principal argument is based upon an allegation that the United States "knowing and intentionally approved or has since supported the Tribes construction of improvements and related activities that have damaged or interfered with the easement."[39/] Robinson also argues that the "United States has failed and refused to take any steps toward rectifying the problems existing on lands that it owns and is subject to the easement."[40/] Finally,

---

[35/] 28 U.S.C. § 2671.

[36/] *United States v. Orleans*, 425 U.S. 807, 814 (1971) (citing *Dalehite v. United States*, 346 U.S. 15, 30–31 (1953).

[37/] *Id.* at 814 (citing and quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)).

[38/] *See Id.* at 815–16; *Logue*, 412 U.S. at 526–28; *Maryland v. United States*, 381 U.S. 41, 48–53 (1965), *vacated on other grounds*, 382 U.S. 159 (1965).

[39/] Docket No. 72, p. 12.

[40/] Docket No. 72, p. 12.

Robinson argues that because the United States accepted Alverda Drive into BIA's road system, the United States "should have made sure that the construction and planned use was consistent with any restrictions on title including the easement."[41/]

Initially, the court notes that from the allegations in the complaint it is not entirely clear in which capacity Robinson is suing the United States—in its representative capacity as trustee, or in its individual capacity for a breach of a duty owed by the United States, acting as trustee, for an independent duty owed to Robinson. The arguments advanced by Robinson in response to the motion are premised upon the later; therefore, the court will assume that Robinson is suing the United States in its individual capacity, not its representative capacity.[42/]

As the Government correctly points out, the trust relationship is between the Tribe and the United States. Analysis, therefore, necessarily starts with the nature of the trust, and the duties and obligations of the United States as the trustee of Indian lands. Unlike the usual trust, the duties and responsibilities of the United States as trustee of Indian lands is not contained in a single "instrument." Those duties and responsibilities, hence the liability of the United States, are found in various federal statutes and regulations, as well as judicial decisions.

The authority for acquiring Indian property interests in trust is embodied in 25 U.S.C. § 465, which provides in relevant part:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

---

[41/] Docket No. 72, p. 13.

[42/] This distinction is important because of the differences in remedies. If as trustee, the claim is against the trustee and payable from the trust assets. If personal, the trust is not liable for the damages.

* * * *

Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

The implementing regulation provides:

Unrestricted land owned by an individual Indian or a tribe may be conveyed into trust status, including a conveyance to trust for the owner, subject to the provisions of this part.[43]

That a distinctive obligation of trust binds the Federal Government in its dealings with the Indian people has long been judicially recognized.[44]  Thus, the conduct of the Federal Government in its dealings with the Indians is therefore judged by the most exacting fiduciary standards.[45]  The Supreme Court has also recognized that this trust relationship is "unique."[46]  This fiduciary relationship, one of the primary cornerstones of Indian law, has been compared to one existing under a common law trust, with the United States as trustee, the Indian tribes or individuals as beneficiaries, and the property and natural resources held as the trust corpus.[47]  In resolving claims against the United States based upon this trust relationship, courts generally

---

[43] 25 C.F.R. § 151.4.

[44] *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 474 n.3 (2003); *Seminole Nation v. United States*, 316 U.S. 286, 296 (1941); *Hoopa Valley Indian Tribe v. Ryan*, 415 F.3d 986, 992 (9th Cir. 2005).

[45] *Seminole Nation*, 316 U.S. at 296–97.

[46] *Oneida County, N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 247 (1985).

[47] *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 11 (2001) (citing *Mitchell II*, 463 U.S. at 225); *Inter Tribal Council of Arizona v. Babbit*, 51 F.3d 199, 203 (9th Cir. 1995).

look to the common law of trusts embodied in the Restatement (Second) of Trusts for guidance.[48]

The precise question in this case involves what personal liability, if any, does the United States, as trustee of Indian lands, have to third parties, specifically Robinson.  Neither party has cited any authority, controlling or otherwise, that directly answers the question.  Nor, has independent research revealed any such authority.  Thus, the court is writing on a clean slate. Because no controlling decision answers the precise question presented in this case, the court must look to decisions construing the scope of sovereign immunity in claims brought against the United States in its capacity as the trustee of Indian lands under similar statutes.  There is a significant body of law addressing that subject that the court may apply by analogy.

In *Mitchell I*,[49] the Supreme Court declined to hold the Government liable to an Indian allottee for alleged mismanagement of forest lands located on allotted lands held in trust by the United States, holding that, because the General Allotment Act did not impose any duty on the United States to manage the timber resources involved, only a limited trust relationship existed between the United States and the allottee.[50]  The Supreme Court further noted that under the Act, the allottee, not the Government, was responsible for the use of the land, limiting the scope of the trust.[51]  On the other hand, in *Mitchell II*, the Supreme Court held that the statutes and regulations giving the federal Government full responsibility to manage the Indian resources and

---

[48] *See, e.g.,White Mountain Apache Tribe*, 537 U.S. at 475–76; *Mitchell II*, 463 U.S. at 226.

[49] *United States v. Mitchell*, 445 U.S. 535 (1980) (*Mitchell I*).

[50] *Id.* at 542.

[51] *Id*. at 542–43.

land for the benefit of Indians in that case created a fiduciary relationship between the Government and Indians, which gave rise to a substantive claim for money damages.[52]

In *Navajo Nation I*,[53] the Navajo Nation sued for an alleged breach of trust based upon the approval by the Secretary of the Interior of amendments to a coal lease between the Tribe and a private coal company under the Indian Mineral Leasing Act of 1938 ("IMLA").  The Supreme Court, applying *Mitchell I* and *Mitchell II*, held that, because the claim did not derive from any liability-imposing provision of the IMLA or its implementing regulations, the controversy fell within *Mitchell I*.  Therefore, the Tribe's claim for compensation failed.[54]  In explaining the contrast between *Mitchell I* and *Mitchell II*, the Supreme Court in *Navajo Nation I* explained the difference as between a "bare trust" for a limited purpose and "full responsibility" for the management of Indian resources.[55]   *In White Mountain Apache Tribe*, decided the same day as *Navajo Nation I*, the Supreme Court held that the Government's exercise of its authority under the statute to make actual use of the property, "not merely exercis[ing] daily supervision but . . . enjoy[ing] daily occupation," therefore, the Government had assumed plenary control over the property and assumed an obligation, as trustee to preserve the property.[56]  In *Navajo Nation II*, reiterating the that under *Navajo Nation I* a "specific, applicable, trust-creating statute or

---

[52] *Mitchell II*, 462 U.S. at 219–26.

[53] *United States v. Navajo Nation*, 537 U.S. 488 (2003) (*Navajo Nation I*).

[54] *Id.* at 493.

[55] *Id.* at 505.

[56] *White Mountain Apache Tribe*, 537 U.S. at 475.

regulation is required, the Supreme Court made clear that control alone did not create even a limited trust relationship.[57]

The teachings of *Mitchell I*, *Mitchell II*, *Navajo Nation I*, *Navajo Nation II*, and *White Mountain Apache Tribe* are clear.  First, that there is a distinct difference between the Government's potential liability under a "bare trust" and those where the government has assumed  "full responsibility for management."  Second, the trust relationship, standing alone, is insufficient to trigger liability for damages on the part of the United States, "a further source of law [is] needed to provide focus for the trust relationship."[58]  That is, there must also be some "statute or regulation (or some combination thereof) that can be fairly interpreted as mandating compensation by the Federal Government."[59]  In analyzing the potential liability of the United States, the court must train on "specific rights-creating or duty-imposing statutory or regulatory prescriptions."[60]  Neither the mere fact that the Government has control or a supervisory capacity is sufficient, it must make actual use of the property.[61]

While these cases, addressing jurisdiction under the Indian Tucker Act,[62] do not directly answer the question posed in this case, they do provide a framework within which the court may analyze the extent to which, if any, the United States has waived its sovereign immunity with respect to actions brought by third parties against it acting in its individual, not representative

---

[57] *United States v. Navajo Nation*, 556 U.S. ---, 129 S. Ct. 1547, 1558 (2009) (*Navajo Nation II*).

[58] *Id.* at 477.

[59] *Navajo Nation I*, 537 U.S. at 506 (quoting *Mitchell II*, 463 U.S. at 218).

[60] *Id.*

[61] *Id.*; *Navajo Nation II*, 129 S.Ct. at 1558.

[62] 28 U.S.C. § 1505.

capacity.  The Supreme Court has recognized that the United States may have dual statutory obligations to both the Indian tribe and third parties.[63/]  Under Supreme Court precedent, liability of the United States to a beneficiary of the trust is dependent some specific statute or regulation creating a duty owed to the beneficiary of the trust, for the breach of which the beneficiary may be awarded monetary compensation.  It follows, *a fortiori*, that the same standard must also apply in cases, as in this case, where a third party is suing the United States for its acts or omissions as the trustee.

Robinson contends that the "bare trust" argument is immaterial.  First, Robinson argues that it is immaterial because the FTCA provides a remedy even when a "uniquely governmental" function is involved that private individuals do not perform.[64/]  Robinson misconstrues the "bare trust" concept.  Contrary to Robinson's argument, the "bare trust" concept is not premised on a "uniquely governmental" function, it addresses the degree of management and control.  Second, Robinson argues that the pivotal question is what duties the United States owes to third parties, the answer to which cannot be found in case law devoted to the unique relationship the United States has with Native American Tribes.  The court finds this argument lacks merit.  The liability of the United States in this case is premised, if at all, on the nature and scope of the duties and liabilities imposed upon the United States by the unique trust relationship between the United States and the Tribe.  Indeed, the very thrust of Robinson's argument is based upon the liability of the United States as the trustee of the Tribe's land.

---

[63/] *See Nevada v. United States*, 463 U.S. 110, 128, 142–43 (1983).

[64/] Citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65 (1955).

Robinson's claims, to the extent that they based upon the alleged approval by the United States of the construction plans provided by of the Tribe, butts against of the discretionary function exception that bars suit against the United States under the FTCA.[65]   Robinson points to no statute or regulation that requires the Secretary of the Interior, or any other department or agency of the United States, to approve the plans of the Tribe.   Even if such a statute or regulation exists, the discretionary function exception would still apply unless the statute or regulation specifically prescribes a course of action to be followed, or the decision was not based upon public policy considerations.[66]

Robinson's reference to and apparent reliance on the Road Maintenance Agreement (RMA) to create a duty is puzzling.   The RMA allocates the cost of any maintenance on the road.[67]   Paragraph 4 of the RMA provides that the decision of the owners of a majority of the parcels that specified repair or maintenance is necessary is conclusive.   The fact that Robinson, the majority owner, has the right to control what maintenance is done on the road has nothing to do with the liability of the United States under the FTCA.   Nothing in that agreement imposes an obligation on any party to maintain Alverda Drive.

---

[65] 28 U.S.C. § 2680(a).

[66] *See Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988).

[67] Docket No. 73-3, pp. 5–7.   Paragraph 1 of the RMA provides:
For so long as the above mentioned works shall exist in private ownership, the Parties hereto, their successors and assigns, shall bear the expenses of maintaining them in good repair.   It is agreed that the cost of maintaining said works shall be paid by the Parties hereto, their successors and assigns, in proportion to the number of land parcels owned by each owner and/or their successors and assigns, and each owner will, upon written demand, contribute and pay his proportionate share of any monies paid out by any of the several owners or of any obligation incurred for the reasonable maintenance or repair of said works.

Robinson also contends that, because the Government accepted Alverda Drive into the BIA road system, it should have ensured that the construction and planned use was consistent with the easement.  First, the court notes that at no place in the complaint is there any allegation concerning Alverda Drive.  Second, although it is not entirely clear, it appears from the record that Alverda Drive was constructed by the Tribe prior to the time that it was transferred to the BIA road system.  While 25 C.F.R., Part 170 "Construction and Maintenance of Roads," requires that the Secretary of Transportation "approve the location, type and design of all projects on the Federal-Aid Indian Road System before any construction expenditures are made,"[68] there is no similar requirement where the road is constructed by the Tribe before it is accepted in the BIA Road System.  With respect to maintenance, Part 170 provides:

> The administration and maintenance of Indian reservation roads and bridges is basically a function of the local Government.  Subject to the availability of funds, the Commissioner shall maintain, or cause to be maintained, those approved roads on the Federal-Aid Indian Road System.  The Commissioner may also maintain roads not on the Federal-Aid Indian Road System if such roads meet the definition of ''Indian reservation road and bridges'' and are approved for maintenance by the Commissioner.  No funds authorized under 23 U.S.C. 208 are available for the maintenance of roads.[69]

> (h) *Maintenance* means the act of preserving the entire roadway, including surface, shoulders, roadsides, structures, and the necessary traffic control devices as nearly as possible in the as-built condition and to provide services for the satisfactory and safe use of such roads.[70]

The regulations further provide with respect to the use of roads:

> The Commissioner shall conduct engineering and traffic analysis in accordance with established traffic engineering practices and determine the necessary

---

[68] 25 C.F.R. § 170.4.

[69] 25 C.F.R. § 170.6.

[70] 25 C.F.R. § 170.2.

maximum speed limit, maximum vehicular weight limit and other needed regulatory signs for roads which he maintains.  The Commissioner shall make recommendations to local Government officials, who are authorized to enact and enforce ordinances on Indian lands, of his determination of the needed regulatory signs. Such regulatory signs as are authorized by established ordinances shall be erected by the Commissioner.  At locations under the jurisdiction of the Court of Indian Offenses the Commissioner shall erect such regulatory signs as he determines are needed.[71]

Nothing in either the RMA or the regulations regarding BIA roads imposes a duty on the United States to take steps toward rectifying the existing problems affecting the easement, i.e., the damage to the lateral and subjacent support, bullnose curb and sidewalk, water valves and other equipment, and the wrought fence alleged to encroach upon the easement.

To the extent that Robinson relies on the California Probate Code, that reliance is misplaced.  Under the FTCA, California law defines what acts are tortious within the scope of the FTCA, i.e., those claims that are generally cognizable under the FTCA.  In the sovereign immunity context, however, state law is inapposite.   It is axiomatic that no state has the power to waive the sovereign immunity of the United States—only Congress has that authority.[72]   The trust relationship between the United States and Indian tribes was created, and is controlled, by federal law.  Thus, the duties, responsibilities, and liability of the United States as the trustee of Indian lands are defined by federal, not state, law.[73]

---

[71] 25 C.F.R. § 170.8(b).

[72] *See, e.g., Lane*, 518 U.S. at 192 ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in *statutory text*." (emphasis added)) and cases cited therein; *United States v.Idaho*, 508 U.S. 1, 6–7 (1993) (same).

[73] Suffice it to say that Robinson has not cited any case in which state law was relied upon in determining the scope of the duties, responsibilities, and liability of the United States as the trustee of Indian lands.  Nor has independent research by this court discovered any such authority.

The most significant point that Robinson overlooks is that, in order for there to be liability under the FTCA, there must exist some duty owed to the plaintiff by the United States that is either intentionally or negligently violated by the act of an employee of the United States. In this case, Robinson has not identified any specific statute or regulation that imposes a duty or liability on the United States in cases, such as this, where the management and use of the property constituting the corpus of the trust is vested in the Tribe, and the United States exercises solely supervisory authority. In the absence of such statutory or regulatory authority it would be incongruous for this court to hold that the United States has a greater obligation to third parties than it does to the beneficiary, for whose benefit the trust exists. It would also be incongruous for this court to hold that the United States has waived its sovereign immunity against suits brought by third parties in cases where, if the beneficiary were the plaintiff, sovereign immunity was not waived. As discussed above, waiver of sovereign immunity cannot be implied, must be clear and explicit, and is narrowly construed in favor of the sovereign. Applying these basic principles to this case, the short of it is that Robinson has failed to carry the burden of establishing that the United States has waived its sovereign immunity

## B. Exhaustion of Administrative Remedies

A necessary predicate to bringing an action against the United States under the FTCA is that the plaintiff have first presented the claim to the appropriate Federal agency.[74] The Government contends that only Dennis Robinson filed a Claim for Damage, Injury, or Death ("Administrative Claim").[75] Thus, according to the Government, Spencer Robinson, Jr., Ricke

---

[74] 28 U.S.C. § 2675(a).

[75] A copy of the Administrative Claim is attached as an exhibit to the Government's motion. Docket No. 70-3.

Robinson, Cynthia Robinson, and Vickie Robinson have not satisfied a jurisdictional predicate and the claims, to the extent they are asserted on behalf of those plaintiffs, must be dismissed. The Government further argues that it is not clear that the Administrative Claim was filed timely. In particular, it is not set out in the Complaint the date that the claim was filed or the dates that the alleged tortious acts occurred. Thus, according to the Government, it is unclear whether the two-year statute of limitations for filing an administrative claim bars this action.[76/]

The Administrative Claim sought $62,000 in monetary damages, injunctive relief, interest, and attorneys' fees. The Administrative Claim also indicates that, although the claim is filed by Dennis Robinson, Spencer Robinson, Jr., Ricke Robinson, Cynthia Robinson, and Vickie Robinson, are co-owners of the easement. This was sufficient to put the Government on notice that the claim was being made on behalf of all the owners.

With respect to the statute of limitations, the court agrees with the Government that it is not entirely clear from the Complaint whether the Administrative Claim was timely filed. The Complaint, filed on April 12, 2004, alleges that the construction activities occurred with the preceding three years. The Complaint further alleges that more than six months lapsed since the Administrative Claim was filed. The Administrative Claim is dated June 23, 2003. Thus, claims arising out of activities giving rise to Robinson's claims that occurred prior to June 23, 2001, are time barred. There is also a gray area—the period between the time the Administrative Claim is dated and the date it was actually filed. Under the facts as pled, this gray area could have been more than four months, June 23 through October 12, 2003 (6 months prior to the date the Complaint was filed). Consequently, based upon the Complaint as presently drafted, the

---

[76/] 28 U.S.C. § 2401; *see Kontrick v. Ryan*, 540 U.S. 443, 453 n.8 (2004).

timeliness of Robinson's claims cannot be determined.  That defect, to the extent it may exist, may, however, be cured by amendment.

## C.  Tribe as Indispensable Party

To the extent that Robinson is suing the United States for monetary damages for a breach of a duty owed by the United States to Robinson, not in its representative capacity as trustee, the Tribe is clearly neither a necessary nor an indispensable party.  The suit affects solely the federal treasury.  On the other hand, to the extent that Robinson is suing the United States in its representative capacity, because it involves non-monetary relief that directly affects the property interests of the Tribe, the Tribe is just as clearly not only a necessary party, but an indispensable party as well.  Robinson does not even attempt to argue that the United States can compel the Tribe to abate the or cure the alleged violations of the rights of the dominant tenement.  As a matter of federal law, a tribe is subject to suit only where Congress has authorized the suit, or the tribe has waived its immunity.[77/]  Robinson has not asserted the existence of either condition.  Thus, to the extent that Robinson seeks relief that affects the Tribe's property interests, the Complaint must be dismissed.[78/]

## VI.  CONCLUSION and ORDER

This court lacks subject matter jurisdiction over the controversy as presently pleaded in the Complaint.  It must, therefore, be dismissed.  From the state of the record it does not appear that Plaintiffs could not plead facts sufficient to establish the existence of subject matter

---

[77/] *Kiowa Tribe of Oklahoma v. Mfg. Tech. Inc.*, 523 U.S. 751, 754 (1998); *see Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986); *Burlington N. & Sante Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1090 (9th Cir. 2007).

[78/] *See Peabody Western Coal Co.*, 400 F.3d at 781.

ORDER [Re: Motion at Docket 70], *Robinson v. United States*, 2:04-cv-00734-RRB-DAD - 21

jurisdiction. Accordingly, leave to file an amended complaint will be granted.  In filing an amended complaint Plaintiffs must:  (1) seek solely relief that is cognizable under the Federal Tort Claims Act; (2) plead with specificity the statutory or regulatory provision creating the duty owed to Plaintiffs by the United States that was violated intentionally or negligently by an employee of the United States; (3) identify the acts or actions of an employee of the United States, acting in his or her official capacity, that violated that duty; and (4) set forth the dates on which those acts or actions occurred, or that harm resulted to Plaintiffs as a result of those acts or actions.

**IT IS HEREBY ORDERED THAT** the hearing scheduled for February 10, 2011, is hereby **VACATED**.

**IT IS FURTHER ORDERED THAT** the Plaintiff's' Request to Take Judicial Notice at Docket No. 73 is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the Federal Defendants' Motion to Dismiss at Docket No. 70 is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Counts One, Two, Three and Four, are **DISMISSED**, with leave to the Plaintiffs to file an amended complaint consistent with this Order within 30 days.

**IT IS FURTHER ORDERED THAT** Counts Five, Six, Seven and Eight, are **DISMISSED**, for lack of jurisdiction without leave to amend.

**IT IS FURTHER ORDERED THAT**, unless Plaintiffs file an amended complaint within the time specified herein, or such other time as the court may permit, the Complaint is **DISMISSED** in its entirety for lack of subject matter jurisdiction.

In the event that no amended complaint is filed timely, the Clerk of the Court is directed to enter a judgment of dismissal without further order of the court.

Dated January 27, 2011

                                s/ Ralph R. Beistline
                                RALPH R. BEISTLINE
                           United States District Judge